UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7\8\13

UNITED STATES OF AMERICA                    :

    - against -                          :

ANGEL MARTINEZ,                             :

              Defendant.      :

**OPINION**

12 Civ. 3573 (DC)
06 Cr. 987 (DC)

- - - - - - - - - - - - - - - - - - -x

**APPEARANCES:**        PREET BHARARA, ESQ.
United States Attorney for the
Southern District of New York
      By:  Jessica A. Masella, Esq.
        Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY  10007

ANGEL MARTINEZ
Defendant Pro Se
United States Penitentiary, Big Sandy
P.O. Box 2068
Inez, KY  41224

CHIN, Circuit Judge

      On October 29, 2009, defendant Angel Martinez was

convicted by a jury of conspiracy to distribute and possess with

intent to distribute cocaine base, in violation of 21 U.S.C.

§ 846, and murder in furtherance thereof, in violation of 21

U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2.  On February 17, 2010,

I sentenced Martinez principally to a term of life imprisonment.

Now proceeding pro se, Martinez moves pursuant to 28 U.S.C.

§ 2255 to vacate, set aside, or correct his sentence, alleging:

(a) ineffective assistance of counsel; (b) insufficient evidence to convict him of murder; and (c) various sentencing errors. For the reasons set forth below, his motion is denied.

BACKGROUND

**A.   The Facts**

**1.   The Murder and Crack Cocaine Conspiracy**

On November 2, 1992, shortly after being informed that Herbert Ortiz was selling drugs on his "turf," Martinez -- together with Steven Mangual and George Torres -- shot and killed Ortiz while he was making a call on a payphone.  (Trial Tr. 433, 1121-22; Sen. Tr. 17).[1]  After Ortiz collapsed to the ground, Mangual and Torres fled.  Martinez, however, stood over Ortiz and continued to fire rounds into his body.  (Trial Tr. at 1122).

The murder helped Martinez transform his organization into a substantial narcotics operation, and he was at its helm for the next fourteen years.  Martinez's drug organization sold

---

[1]      References are as follows:  "Ind't" to the superseding indictment of Martinez issued on October 17, 2007; "Trial Tr." to the transcript of Martinez's trial beginning October 20, 2009; "PSR" to the Presentence Investigation Report, dated January 19, 2010; "Sen. Let." to the presentence letter submitted by Martinez's trial counsel, Jeremy Schneider, dated February 3, 2010; "Sen. Tr." to the transcript of Martinez's sentencing on February 17, 2010; "Pet. Mot." to Martinez's § 2255 motion, dated April 25, 2012; "Schneider Aff." to attorney Jeremy Schneider's Affirmation in opposition to Martinez's § 2255 motion, dated July, 19, 2012; "Gov't Mem." to the Government's memorandum in opposition to Martinez's § 2255 motion, dated Oct. 8, 2012; and "Pet. Reply" to Martinez's reply in support of his § 2255 motion, dated November 7, 2012.

crack, twenty-four hours a day, seven days a week.  (Id. 750-51, 758-60).  Distribution eventually reached a kilogram a week, netting Martinez a weekly profit of approximately $13,000.  (Id. 109-12, 116-17, 146, 148-49).

### 2.   The Drug Enforcement Administration Investigation

Beginning in 2005, a former member of Martinez's organization began to cooperate with the government.  At the direction of the Drug Enforcement Administration (the "DEA"), the cooperating witness (the "CW") called Martinez on January 11, 2006, requesting that Martinez sell him some crack for distribution.  (PSR ¶ 24).  Martinez agreed.  (Id.).  Over the next two weeks, the CW recorded several conversations with Martinez regarding the purchase of drugs and ultimately paid Martinez and his associates $1,000 in exchange for thirty-three grams of crack.  (PSR ¶¶ 25-29, 33).  The CW also recorded conversations with two street-level dealers who informed the CW that they were working shifts for Martinez.  (PSR ¶¶ 31-32).  Based on this and other incriminating information uncovered during the DEA's investigation, Martinez was arrested.

### B.   Procedural History

### 1.   Indictment, Jury Trial, and Direct Appeal

Martinez was indicted on October 17, 2007 for conspiring to distribute and possess with intent to distribute

- 3 -

crack cocaine, in violation of 21 U.S.C. § 846, and the murder
of Ortiz, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C.
§ 2.  (Ind't ¶¶ 1-4).  He was tried before a jury, which
returned guilty verdicts on both counts.  On February 17, 2010,
I sentenced Martinez principally to a term of life imprisonment.

     On February 25, 2010, Martinez appealed his
conviction.  By summary order issued on April 5, 2011, the
Second Circuit affirmed the judgment in all respects.  See
United States v. Martinez, 419 F. App'x 34 (2d Cir. 2011).  He
did not file a petition for certiorari to the Supreme Court, and
thus his judgment of conviction became final ninety days
thereafter.  See, e.g., Clay v. United States, 537 U.S. 522,
527, 532 (2003) ("Finality attaches . . . when the time for
filing a certiorari petition expires."); see also 28 U.S.C.
§ 2101(c) (petition for certiorari must be filed within ninety
days of entry of judgment or decree).

     2.   **The Instant Motion**

     On April 25 2012, Martinez timely filed this motion
pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct
his sentence.  See 28 U.S.C. § 2255(f).  His § 2255 motion
alleges (a) ineffective assistance of counsel; (b) insufficient
evidence to support the murder conviction; and (c) sentencing
errors.  Martinez's trial counsel, Jeremy Schneider, submitted

- 4 -

an affirmation in response to Martinez's motion on July 19,
2012.  The government filed its response on October 8, 2012.
Martinez submitted a reply on November 7, 2012.

DISCUSSION

Martinez's motion is denied.  First, the allegation of
ineffective assistance has no merit.  Second, his challenges to
his murder conviction and the calculation of his Guidelines
range fail procedurally and on the merits.

**A.   Ineffective Assistance of Counsel**

Martinez asserts that he was prejudiced by the
representation that he received.  I am not persuaded.

**1.   Applicable Law**

Allegations of ineffective assistance of counsel are
evaluated in accordance with the two-prong test established in
Strickland v. Washington, 466 U.S. 668, 687-96 (1984).  See also
Gueits v. Kirkpatrick, 612 F.3d 118, 122-27 (2d Cir. 2010)
(applying Strickland to claim of ineffective assistance).  The
first prong is satisfied if counsel's "representation fell below
an objective standard of reasonableness." Strickland, 466 U.S.
at 687-88.  Further, Strickland instructs courts to presume
"that counsel's conduct falls within the wide range of
reasonable professional assistance." Id. at 689; see also
Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (inquiry is

"highly deferential").  Thus, to be constitutionally deficient,
an attorney's representation must fall well outside the norm of
professional conduct.  Additionally, courts must evaluate the
reasonableness of counsel's decisions as of the time the
decision was made.  See Henry v. Poole, 409 F.3d 48, 63 (2d Cir.
2005) (advising courts to "make every effort to eliminate the
distorting effects of hindsight" (omission and internal
quotation marks omitted)).  Hence, counsel's reasonable and
"strategic choices" are "virtually unchallengeable" and
generally will be respected by courts.  Strickland, 466 U.S. at
690-91; see also United States v. Vegas, 27 F.3d 773, 777 (2d
Cir. 1994) ("[B]ecause counsel's strategy was a reasonable one,
these choices do not show incompetence.").

Even if the representation provided by an attorney is
unreasonable, defendant's claim will fail unless he demonstrates
that the ineffective assistance resulted in "substantial
prejudice."  Strickland, 466 U.S. at 687.  This standard is
satisfied if there is a "reasonable probability" that the
outcome of the proceeding would have differed but for counsel's
inadequate representation.  See id. at 694.  Thus, a defendant
claiming ineffective assistance of counsel faces a high bar to
relief.

2.    **Application**

Martinez contends that his trial counsel (a) failed to negotiate a plea agreement with the government, (b) failed to call witnesses who would "prove [he] was innocent of the murder charge," and (c) forfeited certain arguments that his Guidelines range, as determined by the presentence report ("PSR"), was wrong. (Pet. Mot. 1-4). For the reasons set forth below, these arguments fail.

a.    **Plea-Bargaining Process**

Martinez first contends that he requested a Serrano/Alford plea, by which he would plead guilty to the drug conspiracy while maintaining his innocence as to the murder charge. (Pet. Mot. ¶ 8; Pet. Reply ¶ 6). The government did not offer such a plea, however, and Schneider did not believe such a plea would be offered. (Schneider Aff. ¶ 4). Although Martinez contends that Schneider "refused to present the letter to the prosecution" (Pet. Reply ¶ 6), Scheider asserts that "[a]fter a full, frank and candid discussion . . . Martinez agreed that it would not be in his best interest to submit the letter [indicating his willingness to accept a Serrano/Alford plea]." (Id. (further noting that "[a]t no time did I ever refuse to submit the letter on his behalf, nor did I ever prevent him from sending it, or reading it, to the court")).

I find Schneider's description of events --
particularly in light of his conscientious representation of
Martinez throughout the underlying proceedings -- to be
credible.  See Chang v. United States, 250 F.3d 79, 86 (2d Cir.
2001) (allowing district courts to resolve factual issues
through submitted papers and affidavits without an in-person
hearing).[2]  Not only did Schneider make a tactical decision,
Martinez -- at the time, at least -- agreed.  Because
Schneider's "strategic choice made after thorough investigation
of law and facts" is "virtually unchallengeable," Strickland,
466 U.S. at 689-90, Martinez's argument fails.

        Martinez further argues that counsel "refused" to
convey to the government his general willingness to plead
guilty.  (Pet. Mot. ¶ 2).  This is belied by his own admission
that "[t]here is no doubt that the prosecution has recognized
petitioner's intentions to plea."  (Pet. Reply ¶ 4; see also
Schneider Aff. ¶ 5 (referencing Schneider's plea negotiations
with government)).

---

[2]     Martinez's request for an evidentiary hearing is denied.  (Pet.
Mot. 11; Pet. Reply 11).  I have received his attorney's detailed affidavit
describing the events that transpired, in addition to the submissions by
Martinez and the government, and I supervised the case and presided over the
trial.  Hence, I conclude that the testimony of Martinez or Schneider would
be unlikely to shed greater light on the facts.  See, e.g., Puglisi v. United
States, 586 F.3d 209, 214-15 (2d Cir. 2009); Chang v. United States, 250 F.3d
79, 86 (2d Cir. 2001).

Martinez also argues, however, that "[c]ounsel for petitioner at no time bring [sic] petitioner a plea bargain." (Pet. Mot. ¶ 9).  Although Schneider admits that he never brought Martinez a plea offer from the government, this was due to Martinez's refusal to consider a plea that would imprison him for more than twenty years.  (Schneider Aff. ¶ 4; Pet. Reply ¶¶ 20, 24 (acknowledging his desire for a twenty-year sentence without refuting Schneider's assertions that, at the time, twenty years was a maximum or cap)).  In fact, the government confirms that "Martinez's refusal to discuss any plea with a potential sentence of greater than 20 years' imprisonment made it impossible to formulate any proposal that would have been acceptable to the Government."  (Gov't Mem. 31).  In light of the circumstances, I accept Schneider's representations.

Martinez seems to suggest that, had Schneider "[fought for] a deal favorable to the end," he would have secured a plea offer similar to the eight to twenty-four years' imprisonment received by Mangual for Ortiz's murder in a separate proceeding. (Pet. Reply ¶¶ 20, 24).  In the plea-bargaining process, an attorney's duty is to "give [his] clients professional advice on the crucial decision of whether to accept a plea offer from the government."  Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003).  Although, of course, counsel "must always communicate to

- 9 -

the defendant the terms of any plea bargain offered by the prosecution," id. at 182 (quotation omitted), the government is often simply unwilling to offer a plea agreement that satisfies a client's demands.  Mangual was charged in state court (not federal court) with manslaughter (rather than murder) and, moreover, did not instigate the attack on Ortiz.  Here, in light of Martinez's cold-blooded execution of Ortiz, the government understandably was not willing to offer Martinez a deal with comparable terms.

Martinez's present claim that he would have pled guilty -- notwithstanding both Schneider's and the government's recollections of the discussions -- amounts to a "self-serving, post-conviction statement" of little probative value.  United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (per curiam) (requiring some objective evidence when defendant offers only self-serving testimony regarding intent to plea).  His unsworn assertion -- without any supporting evidence -- does not establish with "reasonable probability" that he would have accepted a plea offering more than twenty years' imprisonment had counsel's representation been objectively reasonable.  See id.  (See also Pet. Mem. ¶¶ 2, 8-9; Pet. Reply ¶ 24).  Hence, this argument fails.

### b.   Declining To Call Certain Witnesses

Martinez also claims that Schneider should have called Torres, Victor Lopez, and an unnamed third individual to testify at trial.  Martinez contends that these individuals would have provided exculpatory evidence regarding his involvement in the Ortiz murder.  (Pet. Mot. ¶¶ 10-12).

By contrast, Schneider explained that he believed the testimony of any of these witnesses would have been "extraordinarily prejudicial" to Martinez.  (Schneider Aff. ¶¶ 6-7).  Specifically, Torres pled guilty to Ortiz's murder and would have provided an eyewitness account of the act.  (Id.; Gov't Mem. 33).  Lopez witnessed the murder from a nearby rooftop and would have provided another eyewitness account, in addition to implicating Martinez in the crack conspiracy. (Gov't Mem. 34; Schneider Aff. ¶¶ 6-7).  The third individual was a witness who had identified Mangual as one of Ortiz's shooters in a trial at state court.  (Pet. Mot. ¶ 12; Schneider Aff. ¶ 8).  Even if that witness had been unable to identify Martinez at trial, his testimony was likely to have corroborated that of other witnesses -- including Mangual -- who had cooperated with the government and had testified against Martinez at trial.  In light of the foregoing, I conclude that Schneider's strategic decisions were sound under all of the

circumstances.  <u>See</u> <u>United States ex rel. Walker v. Henderson</u>,
492 F.2d 1311, 1314 (2d Cir. 1974) ("[T]he decision to call or
bypass particular witnesses is peculiarly a question of trial
strategy . . . which courts will practically never second-
guess." (citation omitted)).

      c.   <u>Objections to Guidelines Calculation</u>

     Martinez also claims that Schneider failed to object
to an alleged error in the calculation of his criminal history
category, the propriety of an enhancement for a leadership role,
and the amount of crack attributed to him in the PSR.  (<u>See</u> Pet.
Mot. ¶ 5).  None of these arguments has merit.

     First, as I describe below, Martinez's criminal
history category was not miscalculated; thus, this argument must
fail.  Second, as to both the role enhancement and the quantity
of drugs attributed to Martinez, Schneider <u>did</u> timely object.
(Sen. Let. 2; Sen. Tr. 3).  I overruled these objections based
on the overwhelming evidence supporting both enhancements.
(Sen. Tr. 3).  Hence, the record clearly contradicts Martinez's
claim that counsel forfeited these arguments before me at
sentencing.

     In my view, Schneider provided skillful and spirited
advocacy in a difficult case, and his representation of Martinez
was, at a minimum, objectively reasonable.  Hence, the claim of

ineffective assistance fails, and I need not further consider whether Martinez was prejudiced. Cf. Bennett v. United States, 663 F.3d 71, 87-89 (2d Cir. 2011) (disposing of claim solely on prejudice prong).[3]

B.   **Challenges to Conviction and Guidelines Calculation**

   1.   **Procedural Bar**

          Martinez is procedurally barred from challenging the sufficiency of the evidence supporting his murder conviction and his Guidelines calculation because he failed to raise the issues in his direct appeal.

      a.   **Applicable Law**

          Absent a showing of good cause and prejudice, or actual innocence, a defendant is barred from raising claims in his § 2255 motion that he did not raise on direct appeal. See Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998). The good cause prong requires the movant to show that something "external to the petitioner, something that cannot fairly be attributed to him," resulted in his failure to raise a claim on direct appeal. Coleman v. Thompson, 501 U.S. 722, 753 (1991).

---

[3]   As discussed below, however, the prejudice argument fails in any event.

b.   __Application__

Although Martinez argues that insufficient evidence supported his conviction and that his Guidelines range was miscalculated, he did not raise these arguments in his direct appeal.  Although, as described above, under certain circumstances, a defendant may sidestep that bar, those circumstances do not exist here.  Martinez's § 2255 motion alleges no cause, let alone good cause, for his failure to raise these arguments before the Second Circuit.[4]  See Coleman, 501 U.S. at 753; see also Munoz, 143 F.3d at 637.

Further, aside from his own unsupported and conclusory statements of his own innocence, Martinez introduces no credible evidence of his innocence.  See Bousley, 523 U.S. at 622.  In fact, one of the arguments presented in this motion is that his attorney did not secure a plea agreement for him, an argument that undermines his claim of actual innocence.  In light of witness testimony, drug sales recorded by the CW, and other evidence uncovered by the DEA investigation, his statements to the contrary are insufficient to demonstrate that "it is more

---

[4]      Martinez did challenge the reasonableness of his sentence on direct appeal, on different grounds.  Compare United States v. Martinez, 419 F. App'x 34, 37 (2d Cir. 2011) (summary order) (rejecting Martinez's arguments that I "either misunderstood [my] obligation to consider each sentencing factor or unreasonably applied Section 3553(a) to the facts of this case" and concluding sentence substantively reasonable), with Pet. Mot. 2-4.  I discuss Martinez's specific concerns with respect to his sentence below.

likely than not that no reasonable juror would have convicted
him in the light of the new evidence." Schlup v. Delo, 513 U.S.
298, 327 (1995) (describing habeas petitioner's burden of
proof).

### 2.   Merits

Even assuming Martinez is not procedurally barred from
bringing his claims of insufficiency of evidence and sentencing
errors, I conclude that these arguments fail on the merits.

### a.   Sufficiency of Evidence for Murder Conviction

Construed liberally, Martinez's motion asserts that
the evidence presented by the government at trial was
insufficient to tie him to the murder of Ortiz.  (See Pet. Mot.
5 (noting "it was [] unreasonable for the trial court to
conclude that the evidence conclusively proved the murder of Mr.
Herbert Ortiz")).  This argument fails.

### i.   Applicable Law

Claims of insufficiency of the evidence are evaluated
in the light most favorable to the prosecution.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); see also United States v.
Medina, 944 F.2d 60, 66 (2d Cir. 1991) ("In challenging a
conviction on the ground of insufficient evidence, a defendant
bears a heavy burden.").  A guilty verdict should be affirmed if
"'any rational trier of fact could have found the essential

elements' of the charged crime 'beyond a reasonable doubt.'"
United States v. Salmonese, 352 F.3d 608, 618 (2d Cir. 2003)
(quoting Jackson, 443 U.S. at 319).

### ii.  Application

The jury heard overwhelming evidence implicating
Martinez in the murder of Ortiz.  Martinez had previously warned
Ortiz not to sell drugs on his "turf."  (Trial Tr. 123-24).
When Ortiz disregarded that warning, Martinez decided to "light
him up" and provided the guns used in the hit.  (Id. at 1118-
20).  In addition to Martin, other eyewitnesses -- including
Mangual, one of the three shooters -- testified that Martinez
shot Ortiz.  (Id. at 433, 867-77, 1121-23).  Moreover, Martinez
had confessed to another witness that he had killed Ortiz,
confiding that he "couldn't stop shooting."  (Id. at 126).
Notwithstanding Martinez's assertions otherwise, the evidence
presented at trial, viewed in the light most favorable to the
prosecution, was certainly sufficient to prove Martinez guilty
beyond a reasonable doubt of Ortiz's murder.

As part of his challenge to the sufficiency of the
evidence, Martinez submitted the affidavit of Victor A. Lopez.
See Affidavit of Victor A. Lopez, 12-cv-3573, ECF No. 5.  Lopez
did not testify at trial, but as others testified, Lopez was one
of various individuals who observed the Ortiz murder from a

nearby rooftop.  His affidavit alleges that Ian Martin, a
government witness who testified that he was on the same roof
and also observed the murder of Ortiz, "gave false testimony
about him knowing us anytime prior to 1993." Id.  Notably,
however, the affidavit never suggests that Martin lied regarding
what he observed or the events of that night.  Similarly, Lopez
provides no exculpatory evidence suggesting that Martinez was
not involved in the murder of Ortiz.  Hence, in light of the
considerable evidence offered in support of Martinez's
conviction for murder, the Lopez affidavit does little to
undermine confidence in that verdict.

### b.    Alleged Sentencing Errors

Martinez challenges his sentence on the basis that
(a) he erroneously received a leadership enhancement; (b) the
quantity of drugs attributed to him -- 4.5 kilograms of crack --
was not supported by the evidence; and (c) his criminal history
category was "misrepresented." (Pet. Mot. ¶¶ 6, 7, 39).  These
arguments are not supported by the record.

### i.    Leadership and Quantity Enhancements

### (a)    Applicable Law

Under the Guidelines, a defendant's offense level may
be increased by four if he was "an organizer or leader of a
criminal activity that involved five or more participants

. . . ." U.S.S.G. § 3B1.1(a). Although the charged criminal activity must involve five or more individuals, "[a] defendant may be subject to a four-level enhancement even if the defendant managed only one other participant." United States v. Mi Sun Cho, 713 F.3d 716, 722 (2d Cir. 2013) (per curiam); see also U.S.S.G. § 3B1.1(a) cmt. n.2.

Sentencing for drug-related offenses is based, in part, on the quantity of drugs for which the defendant is responsible. See U.S.S.G. 1B1.3. A "defendant is accountable not only for all the narcotics with which he was directly involved, but also, 'in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of narcotics that were within the scope of the criminal activity that he jointly undertook.'" United States v. Chavez, 549 F.3d 119, 136 (2d Cir. 2008) (alteration omitted) (quoting U.S.S.G. § 1B1.3 cmt. n. 2).

### (b)   Application

At sentencing, I overruled Martinez's objection to the leadership enhancement because the evidence overwhelmingly demonstrated that the enhancement was warranted. The CW recorded at least six individuals discussing the narcotics conspiracy -- not including the CW or Martinez -- for the DEA investigation. (See PSR ¶¶ 17-36). Moreover, six members of

Martinez's crew testified against him at trial.  (Gov't Mem. 7).
The testimony revealed that Martinez recruited kids from the
neighborhood to work for him as street-level pitchers and later
as managers.  (Trial Tr. 660, 749-52; Gov't Mem. 14).  Cf.
United States v. Garcia, 413 F.3d 201, 223 (2d Cir. 2005)
(recruiting another to act as drug courier sufficient to impose
two-level enhancement for supervisory role).  As I concluded at
sentencing, "the evidence [] established that Mr. Martinez was
the leader of the group, that there were a lot more than five
people involved in the group.  And the evidence established that
he had a leadership role and that the four-point adjustment is
warranted."  (Sen. Tr. 4:1-5).  Martinez has failed to show that
these findings were erroneous.

        Martinez also contends that the evidence presented was
insufficient to attribute more than 4.5 kilograms of crack
cocaine to him.  The argument fails.  At trial, I heard
testimony that, for some fourteen years, Martinez's organization
sold crack twenty-four hours a day, seven days a week.  (Trial
Tr. 116, 448, 758; Sen. Tr. 3; Gov't Mem. 37-38).  Moreover, for
over a decade, his organization distributed approximately one
kilogram of crack cocaine each week.  (Trial Tr. 116, 146, 148-
49, 729-33).  Thus, I concluded that his "was an operation that
extended for several years and it was an active enterprise and

- 19 -

dealt with a lot more than 4.5 kilos." (Sen. Tr. 3:23-25). In light of the foregoing, 4.5 kilograms of cocaine was -- at a minimum -- a "reasonably foreseeable [quantity] within the scope of the criminal activity." Chavez, 549 F.3d at 136.

### ii. Criminal History Calculation

#### (a) Applicable Law

The Guidelines take into consideration a defendant's past criminal conduct when calculating his sentencing range. See U.S.S.G. § 4A1.1. Criminal history points are received for "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere for conduct not part of the instance offense." Id. § 4A1.2(a)(1) (emphasis added). A defendant generally receives one criminal history point -- but no more than four total points -- for a sentence of sixty days or less of imprisonment. Id. §§ 4A1.2(a)(1), 4A1.1(c). When "the defendant committed the instant offense while under any criminal justice sentence, including . . . parole," two points should be added to his criminal history category. Id. § 4A1.1(d). The Guidelines then place a defendant in a criminal history category in accordance with the number of criminal history points that he received. See id. ch.5, pt.A (sentencing table).

(b)   Application

The PSR described each of Martinez's five prior
criminal convictions and allocated one criminal history point to
each:  loitering, attempted assault, two instances of aggravated
unlicensed operation of a motor vehicle, and unauthorized use of
a vehicle without the owner's consent.  (PSR ¶¶ 78-86).
Martinez contends that the PSR wrongly attributed a point to the
loitering conviction, and that the seriousness of his criminal
history was overstated.

Martinez correctly states that the PSR attributed one
criminal history point to his conviction for loitering in the
1st degree (unlawful use of a controlled substance).  Further,
the Guidelines specify that "[s]entences for [certain] prior
offenses and offenses similar to them, by whatever name they are
known, are never counted."  U.S.S.G. § 4A1.2(c)(2).  Loitering
is included as one such offense.  Id.  Here, however, although
Martinez was ostensibly convicted for loitering, he had, in
fact, "sold a controlled substance to an undercover police
officer."  (PSR ¶ 79).  Because the use of "loitering" in the
Guidelines was not intended to preclude consideration of drug-
related offenses in a defendant's criminal history calculation,
see United States v. Hines, 628 F.3d 101, 113-14 (3d Cir. 2010)
(violation of statute that criminalized loitering to illegally

- 21 -

use, possess, or sell drugs was not similar to loitering as used
in the Guidelines), the attribution of one point to Martinez's
loitering charge was not in error.

Moreover, to the extent Martinez suggests that his
criminal history was overstated because three of his five prior
convictions were for vehicular offenses, I disagree. (Pet. Mot.
2). The PSR attributed four criminal history points for those
five prior convictions. See U.S.S.G. § 4A1.1(c) (criminal
history points derived from convictions resulting in sentences
of 60 days' imprisonment or less are limited to four). Then,
because the crimes for which he was convicted were committed
while he was on parole, he received two additional points for a
total of six criminal history points. See id. § 4A1.1(d).
Martinez, therefore, as a defendant with six criminal history
points, was placed in Criminal History Category III. See id.
ch.5, pt.A (defendant with four to six criminal history points
is categorized in Criminal History Category III). (PSR ¶ 90).
Even if, however, the PSR had disregarded one, or even two, of
those prior vehicular convictions, Martinez's criminal history
category -- and resulting Guidelines range -- would not have
changed. Moreover, even at Criminal History Category I, in
light of his offense level of 45 -- literally off the Guidelines
charts -- Martinez still would have been subject to a Guidelines

- 22 -

range of life.  See U.S.S.G. ch.5, pt.A (Guidelines range is
life across all criminal history categories for defendants with
base offense level of 43).  Hence, the vehicular convictions did
not result in an overstatement of the seriousness of Martinez's
criminal history.

In fact, at sentencing, Martinez had no quarrel with
his criminal history category.  He affirmed that he had read the
PSR, reviewed it with his attorney, and that he had no factual
objections to the PSR.  (Sen. Tr. 2:16-3:9).  Moreover, his only
objections at sentencing were to the leadership enhancement and
attributed drug quantity.  (Id. 3:14-18).  As Martinez has
identified no error, I conclude that his argument that his
Guidelines range was miscalculated cannot succeed.

<u>CONCLUSION</u>

For the reasons set forth above, Martinez's request
for an evidentiary hearing is denied.  Moreover, he has not
demonstrated any basis for relief under 28 U.S.C. § 2255;
accordingly, the motion is denied.  Because Martinez has not
made a substantial showing of the denial of a constitutional
right, I decline to issue a certificate of appealability.  See
28 U.S.C. § 2255.  I certify pursuant to 28 U.S.C. § 1915(a)(3)
that any appeal taken from this decision and order would not be

taken in good faith.   The Clerk of the Court shall enter

judgment accordingly and close this case.

          SO ORDERED.

Dated:    New York, New York
          July 18, 2013

                                    _____
                                    DENNY CHIN
                                    United States Circuit Judge
                                    Sitting by Designation